UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAULA J. MAKSE, | : | Civ. No. 09-2392-NLH-KMW |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| SPIRIT AIRLINES, INC. | : | |
| and DONALD ELDON, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

SHELLY A. LEONARD
BLAU, BROWN & LEONARD, LLC
224 W 30TH STREET, SUITE 809
NEW YORK, NY 10001
    *On behalf of plaintiff*

KIMBERLY J. GOST
ELIZABETH D. TEMPIO CLEMENT
LITTLER MENDELSON P.C.
1601 CHERRY STREET
SUITE 1400
PHILADELPHIA, PA 19102
    *On behalf of defendant Spirit Airlines*

JAMES G. FANNON
P.O. BOX 1684
3323 AVALON COURT
VOORHEES, NJ 08043
    *On behalf of defendant Donald Eldon*

**HILLMAN**, District Judge

    This matter comes before the Court on defendants' motions

for summary judgment on plaintiff's claims of sexual harassment

and retaliation.  For the reasons expressed below, defendants'

motions will be granted.

## BACKGROUND

For six years, from June 2001 through July 2007, plaintiff, Paula J. Makse, was the only female mechanic employed by defendant Spirit Airlines, Inc. in Atlantic City, New Jersey. In July 2007, plaintiff was fired for violating Spirit's attendance policy. Plaintiff claims, however, that during her employment Spirit fostered a hostile work environment, which her supervisor, defendant Donald Eldon, aided in perpetrating. She also claims that her termination was actually motivated by her gender, and was in retaliation for her complaints about the sexual harassment she experienced. Plaintiff claims that defendants' conduct has violated Title VII, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -49.

Defendants have moved for summary judgment on all of plaintiffs' claims. Spirit and Eldon contend that plaintiff's hostile work environment claims against them are time-barred. Spirit also argues that plaintiff's other claims for discrimination and retaliation are not supportable by the evidence. Plaintiff has opposed defendants' motions.

## DISCUSSION

**A.   Jurisdiction**

This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-16(c), and supplemental jurisdiction over plaintiff's state law claims under

28 U.S.C. § 1367.

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has

met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

## C.   Analysis

As stated above, plaintiff asserts claims against Spirit for fostering a hostile work environment and for retaliating against her in violation of Title VII, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -49.  Plaintiff also claims that Eldon violated the NJLAD by aiding and abetting the discrimination perpetrated against her.[1] The sufficiency of plaintiff's claims will be addressed in turn.

### 1.   Hostile work environment claims

While plaintiff served as a mechanic for Spirit, Eldon served as the lead mechanic, and as plaintiff's supervisor, until May 2006.  Prior to that time, plaintiff claims that Eldon made

---

[1]The NJLAD makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD.]" N.J.S.A. 10:5-12e.

numerous derogatory statements about women to her and to the other male mechanics, and that he posted pictures and other items around their workspace that were pornographic, obscene and offensive.  After suffering this alleged hostile environment for some time, on May 31, 2006, plaintiff provided James Furdyn, Spirit's Maintenance Department Manager and direct report for the lead mechanics, with a written complaint about Eldon.  Furdyn had just begun serving as the department manager a few weeks earlier. Furdyn immediately notified David Blanton, the Senior Director of Employee Relations, of plaintiff's complaint.

In June 2006, Blanton traveled from his station in Michigan to Atlantic City at least twice to conduct in-person investigations consisting of at least 10 interviews regarding plaintiff's charges against Eldon.  Finding that no individuals could corroborate plaintiff's claims regarding Eldon's direct harassment of her, Blanton, along with input from Furdyn and Garret West, Furdyn's supervisor, determined that those claims could not be substantiated.  Blanton did find, however, that Eldon had made some comments that were not appropriate for the work place, and on July 12, 2006, Spirit issued Eldon a final, written warning.[2]

_____

[2]Eldon disputed the allegations in the disciplinary letter. The letter was missing from Eldon's personnel file at Spirit, but plaintiff produced a copy of it during discovery.  Spirit questions how plaintiff became in possession of the document. This Court will not comment on the matter because discovery

From that point on, plaintiff never worked directly with Eldon or had any interaction with him.  One day a week for approximately an hour and a half their shifts overlapped, but following plaintiff's filing of her complaint against Eldon, plaintiff relates that he avoided her, and that she had no more direct problems with Eldon, or with any other Spirit employees.

Spirit and Eldon have moved for summary judgment on plaintiff's hostile work environment claims against them arising from Eldon's alleged harassment, contending that these claims are time-barred.[3]  Title VII requires a claimant to file a charge with the EEOC within 300 days of an unlawful employment practice, and the NJLAD requires a plaintiff to file a claim within two

---

disputes are the province of the magistrate judge.

Relatedly, plaintiff argues that any discipline less than Eldon's immediate termination demonstrates that Spirit fostered a hostile work environment.  Because plaintiff's hostile work environment claims regarding Eldon's alleged harassment are time-barred, the Court will not consider this argument, except to note that an employer's response to a claim of sexual harassment must be "reasonably calculated to prevent further harassment," but "the law does not require that investigations into sexual harassment complaints be perfect."  See Knabe v. The Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997).

[3]In order to establish a hostile work environment claim under Title VII and the NJLAD, plaintiff must show that (1) she suffered intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for vicarious liability. Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001) (citations omitted); Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 455 (N.J. 1993).

years.  42 U.S.C. § 2000e-5(e)(1); <u>Cardenas v. Massey</u>, 269 F.3d 251, 255 (3d Cir. 2001) (citations omitted).  Failure to follow these time requirements results in the complete bar of that claim.  <u>Nat'l Ry. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002); <u>Cardenas</u>, 269 F.3d at 255.

Here, defendants contend that plaintiff ceased to experience any alleged sexual harassment or hostile work environment from at least May 31, 2006, when she lodged her written complaint about Eldon with Furdyn, but at most from July 12, 2006, when Eldon received a written reprimand.  Because plaintiff failed to file a charge with the EEOC within 300 days of July 12, 2006, and she did not file her instant suit within two years of that date, defendants argue that plaintiff's harassment claims are time-barred.

In response, plaintiff argues that Eldon's harassment and hostile comments did not stop in May or July 2006.  She contends that in September 2006 Eldon wrote an email to a supervisor that contained the word "bitch," which ostensibly referred to plaintiff, and that she heard, second-hand, that Eldon would routinely tell co-workers on a daily basis that she was a "fucking bitch" and "fucking cunt" and "whore," and that she was having a sexual relationship with a former Spirit employee.  Plaintiff contends that these comments occurred within the

limitations period.[4]  Plaintiff further argues that those incidents, which occurred during the limitations period, are a continuation of the prior harassment.  Therefore, because they make one continuous violation, plaintiff argues that her claims are not time-barred.[5]

Title VII and the NJLAD permit claims on time-barred discriminatory actions if they add up to one continuous violation that occurs through the limitations period.  Under the continuing violation doctrine, "a plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate the act is part of an ongoing practice or pattern of discrimination of the defendant."  Rush v. Scott Specialty Gases, 113 F.3d 476, 481 (3d Cir. 1997) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995).  A

---

[4]Plaintiff also argues that she was investigated for time card fraud shortly after she filed her complaint about Eldon, and that the investigation was assisted by a statement by Eldon, who was plaintiff's supervisor.  Plaintiff argues that this is another example of the continuing sexual harassment and hostile environment.  It is unclear exactly when this occurred, but from plaintiff's representation, it occurred around the same time as her May 31, 2006 written complaint about Eldon.  Even if this allegation could be considered part of a continuing pattern of harassment, although it does not appear to be disputed by plaintiff that she was paid for time she did not work and accordingly was suspended for three days without pay, it occurred outside of the limitations period, and is time-barred.

[5]Alternatively, plaintiff argues that the time-barred evidence is admissible as "background" evidence to support her non-time-barred claims.  Because the Court does not find that plaintiff has any valid sexual harassment claims during the statutory limitations periods, that argument is moot.

plaintiff must first establish that "at least one discriminatory act occurred within the filing period" and second, that "the harassment was more than isolated, sporadic acts of intentional discrimination." Id. The plaintiff bears the burden of demonstrating that the continuing violation doctrine applies. West, 45 F.3d at 754-55. This same standard applies to a NJLAD claim. See Shepherd v. Hunterdon Developmental Center, 803 A.2d 611, 621 (N.J. 2002); Bolinger v. Bell Atlantic, 749 A.2d 857, 860 (N.J. 2000).

The problem with plaintiff's availment of the continuing violation doctrine is that she cannot establish disputable facts to support its application. In her deposition, plaintiff testified to the alleged harassment by Eldon, and all that alleged conduct occurred prior to her May 31, 2006 written complaint. Plaintiff also testified that following her complaint, Eldon "avoided" her. In order to bring this time-barred conduct within the limitations period of her Title VII and NJLAD claims, plaintiff alleges in a declaration submitted in opposition to defendants' summary judgment motion that following her May 2006 complaint, "I continued to be subjected to volatile rumors created by ELDON. These rumors lasted until the day I was terminated." (Docket No. 42-3 ¶ 25.) Plaintiff contends that "on a daily basis until the day I was terminated," Eldon would routinely tell co-workers that she was a "fucking bitch" and

"fucking cunt" and "whore," and that she was having a sexual relationship with a former Spirit employee.  (Id. ¶ 26.)

This evidence cannot save plaintiff's hostile work environment claim.  Aside from any evidentiary issues regarding plaintiff's proffer of such evidence, and issues as to whether plaintiff's declaration, produced in opposition to a summary judgment motion, could be considered a "sham affidavit,"[6] plaintiff's claims of what Eldon allegedly told other people about plaintiff post-May 2006 constitute "mere allegations," which are not sufficient to defeat defendants' properly supported motions.  Plaintiff has not provided any affidavits or testimony by the people who purportedly heard Eldon's comments, and plaintiff has not even identified who these individuals are.  At a minimum, if Eldon had made such comments to plaintiff's co-

_____

[6]The Federal Rules of Civil Procedure are silent on how a court should treat, for purposes of summary judgment, a party's affidavit that is contrary to his deposition testimony.  Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007).  To address and remedy this issue, courts developed the "sham affidavit" doctrine.  This doctrine "refers to the trial courts 'practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony.'"  Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (quoting Shelcusky v. Garjulio, 797 A.2d 138, 144 (2002)); see In re CitX Corp., Inc., 448 F.3d 672, 679 (3d Cir. 2006) (opining that a sham "affidavit comes in later to explain away or patch up an earlier deposition in an attempt to create a genuine issue of material fact").  The doctrine arises out of a court's recognition that depositions are more reliable than affidavits, largely because depositions are solely a party's testimony while affidavits are the products of counsel and drafted almost exclusively for a specific purpose. Jiminez, 503 F.3d at 253-54.

workers, plaintiff should be able to name the people who told plaintiff about those comments.  Moreover, a reasonable jury would consider it incongruent that plaintiff would make a written complaint about Eldon, and be aware that he received a final disciplinary warning letter regarding his inappropriate workplace conduct, but then fail to inform Furdyn or any other Spirit supervisor regarding Eldon's continued harassment for the entire next year.

Consequently, because plaintiff has insufficient proof regarding any harassment during the limitations period, the continuing violation doctrine does not save plaintiff's claims based on Eldon's alleged harassment pre-May 2006.  Thus summary judgment must be entered in Spirit's and Eldon's favor on these claims.

### 2.  Unlawful termination and retaliation claims

In July 2007, plaintiff was terminated from her employment with Spirit for violating the attendance policy.  Plaintiff claims, however, that she was actually terminated because of her gender, and in retaliation for her sexual harassment complaint.[7]

In April 2007, Spirit initiated and began strictly enforcing a no-fault attendance policy, which affords an employee a certain number of points per year.  Exceeding the maximum allowable

---

[7]Plaintiff has properly complied with the EEOC procedures regarding these Title VII claims.

11

points subjects an employee to termination.  On April 23, 2007,
plaintiff signed a form acknowledging the new policy.

In June 2007, plaintiff was approved for a series of
vacation days: June 12, 16, 17, 18, 19, 23, 24, 25, 26 and 30,
and July 1 and 2.  On July 2, 2007, Furdyn called plaintiff to
inquire about her intentions on returning to work the next day as
scheduled--co-workers had noticed that prior to her vacation,
plaintiff had removed her tools and had stated that plaintiff
indicated she did not plan to return.[8]  Plaintiff related to
Furdyn that she did intend to return to work, but the next day,
July 3, plaintiff called out sick.  This absence counted toward
one of plaintiff's allotted 9 points, several of which she had
previously accumulated.  Plaintiff was then scheduled to return
to work on July 7, but she did not show up that day or the next.
According to Furdyn, on July 9, Furdyn called plaintiff's cell
phone regarding her intention to return to work and informed her
about how to use FMLA leave if she needed it, but she did not
answer his call, and in the days following, she never called
him.[9]  By that point, plaintiff had exceeded the 9 points
allowable under Spirit's attendance policy.  Because she had

---

[8]Plaintiff claims that it was only Eldon who told Furdyn
this lie about her intention not to return to work.

[9]Furdyn relates that he never received a phone call from
plaintiff, and he represents that he carries a company-issued
cell phone that is on 24 hours a day.

violated the attendance policy, Furdyn terminated plaintiff's employment on July 11, 2007, and emailed her the termination notice, which included a note to contact him if she was experiencing extenuating circumstances.

Plaintiff argues that her termination was improper, and motivated by gender discrimination and retaliation.  She claims that on July 7, 2007, because she was suffering from a nervous breakdown due to all the anxiety caused by Eldon's harassment, with the last straw being Eldon's false representation to Furdyn that plaintiff had no intention of returning to work, she visited a doctor, who restricted her from flying[10] because of her anxiety, and prescribed her anti-anxiety medication, which she had filled the next day.  On that same day, plaintiff called Tony Badmus, the lead mechanic, and informed him that she was suffering from a nervous breakdown, and would be faxing a doctor's note.  Badmus informed Furdyn of plaintiff's call.

It is not disputed that Furdyn never received the July 7, 2007 fax with plaintiff's doctor's note.  Plaintiff alleges that Eldon stole the fax off the fax machine, in yet another act of harassment.  Plaintiff also claims that she attempted to contact Furdyn several times, but did not hear from him.  Plaintiff then claims that she spoke to another Spirit employee, who informed

---

[10]It appears that plaintiff traveled to Florida on her vacation, and saw a doctor in Florida.

her that her fax was never received, and that a male had already
been hired to fill her position.  Plaintiff refaxed the doctor's
note on July 12, 2007, which Furdyn received.

Although it is in dispute why Furdyn never received
plaintiff's doctor's note on July 7--whether plaintiff never sent
it, Eldon stole it, or some other reason--it is not disputed that
if Furdyn had received the note, he would not have assessed her a
point for that day, and she therefore would not have exceeded her
allotment.  Plaintiff denies that Furdyn left her a voice mail
message regarding how to utilize FMLA leave, and she denies that
he emailed her a copy of her termination letter to her personal
email address, with a note telling her to contact Spirit if she
was experiencing extenuating circumstances.  She argues that her
termination for attendance violations was a pretext, and she was
truly fired to get rid of her--a woman who complained about
sexual harassment--a view she argues is supported by Spirit's
cavalier attitude toward her complaints about Eldon's conduct,
and further supported by the fact that in an email from Furdyn's
supervisor, he questioned the legitimacy of plaintiff's
condition, noting the "long line of trouble and circumstances
surrounding this individual," and stating that "it is time to cut
her loose and move on."

A claim of gender discrimination and retaliation under
Title VII and the NJLAD uses the burden shifting framework

14

established in McDonnell Douglas Corp. v. Green, 411 U.S. 792,
803-05 (1974).  Under that framework, a plaintiff must first
establish a *prima facie* case.  The elements of a *prima facie* case
depend on the facts of the particular case, and it cannot be
established on a one-size-fits-all basis.  Jones v. School Dist.
of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999).  Typically, to
prove a *prima facie* case of disparate treatment, a plaintiff must
offer sufficient evidence that he was: (1) a member of a
protected class, (2) qualified for the position, and (3)
nonmembers of the protected class were treated more favorably
than him.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d
313, 318-19 (3d Cir. 2000) (citing Ezold v. Wolf, Block, Schorr
and Solis Cohen, 983 F.2d 509, 522 (3d Cir. 1993)); see also Aman
v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087-88 (3d Cir.
1996) (holding that unlawful discrimination claims under the
NJLAD "parallel" Title VII claims and therefore employ the same
McDonnell Douglas framework).  To establish a *prima facie* case
for a retaliation claim, a plaintiff must show: (1) she engaged
in a protected employee activity; (2) the employer took adverse
action against her after, or contemporaneous with, her activity;
and (3) a causal link exists between her activity and the
employer's action against her.  Muzslay v. City of Ocean City,
238 Fed. Appx. 785, 789 (3d Cir. 2007) (citing Abramson v.
William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001)).

Should plaintiff establish a *prime facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). This is a light burden. Id.

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion. Goosby, 228 F.3d at 319 (citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 2097 (2000)). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or

16

otherwise did not actually motivate the employment action (that
is, the proffered reason is a pretext)." _Fuentes_, 32 F.3d at 764
(internal citations and quotes omitted).  To do this, a plaintiff
"must demonstrate such weaknesses, implausibilities,
inconsistences, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action that a
reasonable factfinder could rationally find unworthy of credence,
and hence infer that the employer did not act for [the asserted]
non-discriminatory reasons." _Id._ at 765 (internal citations and
quotes omitted).

    Spirit argues that plaintiff cannot meet her burden on
either her discrimination claim or retaliation claim.  First,
with regard to her discrimination claim, Spirit contends that
plaintiff has not met her _prima facie_ case because she cannot
demonstrate that non-members of her protected class were treated
more favorably.  Spirit argues that plaintiff has not provided
any evidence that Spirit failed to terminate male employees who
similarly exceeded the points allowable under the attendance
policy.  Second, as to her retaliation claim, Spirit argues that
plaintiff has failed to meet her _prima facie_ case because she has
provided no evidence that her May 31, 2006 complaint about
Eldon's sexual harassment was causally related to her termination
a year later.  Spirit further argues that even if it were
determined that plaintiff has stated a _prima facie_ case for both

claims, plaintiff has failed to rebut the legitimate, non-discriminatory reason for her termination.

The Court agrees with Spirit that plaintiff's claims are unsupportable.  For plaintiff's discrimination claim, the lack of any evidence regarding Spirit's disparate application of the attendance policy is fatal.  Simply because plaintiff is a woman who was subjected to the enforcement of the policy does not automatically translate into a case that Spirit applies the policy disparately among men and women.  Thus, summary judgment must be entered in Spirit's favor on this claim.

With regard to plaintiff's retaliation claim, even if the Court were to credit plaintiff's "pattern of antagonism" argument regarding the causal connection between her termination and her complaints about Eldon[11], and it were to ignore the lack of temporal proximity between her May 31, 2006 complaint and her

---

[11]In addition to her termination, plaintiff proffers as a pattern of antagonism: (1) her view that Eldon was not appropriately disciplined for his harassment of her, and (2) that in investigating plaintiff's time card fraud, Furdyn asked for a statement from Eldon, as plaintiff's supervisor, despite the fact that plaintiff had just filed a formal complaint against him. Although the causal link may be established by proof that the employer "engaged in a pattern of antagonism in the intervening period," Valdes v. Union City Bd. of Educ., 186 Fed. Appx. 319, 324 (3d Cir. 2006), it is questionable whether these two alleged incidents of antagonism, which occurred in May-July 2006, suffice to establish antagonistic conduct or a pattern of activity through to July 2007.

July 12, 2007 termination[12], plaintiff has failed to show that
Spirit's reason for firing her was merely a pretext for its
actions.  Plaintiff does not deny that when she failed to report
back to work following her approved vacation days, she had
exceeded her allowable allotment of points under the attendance
policy.  Even if it is true that plaintiff attempted to provide a
doctor's note the day before she was supposed to return to work
in order to justify her future absences and not violate the
attendance policy, and even if that note, if received, would have
prevented her termination, it is undisputed that Furdyn never
received that doctor's note prior to making the termination
decision.  Additionally, even though it is disputed why plaintiff
and Furdyn never spoke on the telephone regarding plaintiff's
need for medical leave, it is undisputed that Furdyn did not

---

[12]Temporal proximity that is "unduly suggestive" satisfies
the causation element of a plaintiff's *prima facie* case at the
summary judgment stage.  Farrell v. Planters Lifesavers Co., 206
F.3d 271, 279-80 (3d Cir. 2000)); see also Thomas v. Town of
Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (quoting Estate of
Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003)("Even if
timing alone could ever be sufficient to establish a causal link,
. . . the timing of the alleged retaliatory action must be
unusually suggestive of retaliatory motive before a causal link
will be inferred.")).  Using time to satisfy the causation
element of the *prima facie* case, however, requires consideration
"with a careful eye to the specific facts and circumstances
encountered."  Farrell, 206 F.3d at 279 (citing Kachmar v.
SunGard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997)).  "There is
clearly a difference between two days and nineteen months."  Id.
(citations omitted); see also Williams v. Philadelphia Housing
Authority Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (holding
that two months was not "unduly suggestive"); Thomas, 351 F.3d at
114 (holding that three weeks was not "unduly suggestive").

receive any direct communication from plaintiff regarding her absences until July 12, 2007, a day after plaintiff was terminated.

Moreover, although it is disputed to what extent Furdyn considered input from other Spirit management regarding plaintiff's discipline for violating the attendance policy, it is not disputed that under the attendance policy, Furdyn was afforded the final decision-making authority.  It is further undisputed that plaintiff did not make any complaints, formal or otherwise, about Eldon to Furdyn in the preceding year since her May 2006 written complaint.  It is also undisputed that plaintiff had not had any notable interaction with Furdyn since her discipline for time card fraud a year earlier, for which she does not deny receiving unjustified pay for days she did not work, and for which she only received a three day suspension, thus not showing any evidence of animus by Furdyn to plaintiff that would have negatively influenced his decision on whether to terminate plaintiff.

When plaintiff's absences exceeded her allowable limit, Furdyn, the ultimate decision-maker, was confronted with an employee in violation of the attendance policy, who had previously committed time card fraud, who had failed to communicate with him regarding her absences for five days, and who had not reported to work, without authorization, for four

days.  The fact that plaintiff had lodged a sexual harassment complaint a year earlier--without more--cannot serve as a cloak protecting her from any legitimate disciplinary action in the future.

Accordingly, because plaintiff cannot demonstrate that an invidious discriminatory reason was more likely than not the motivating or determinative cause of Spirit's decision to terminate her, plaintiff's retaliation claim fails.  Thus, summary judgment must be entered in favor of Spirit on this claim.

## CONCLUSION

For the reasons expressed above, defendants' motions for summary judgment are granted in their entirety.  An appropriate Order will be issued.

Dated: March 28, 2011                    s/ Noel L. Hillman
                                    NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey